UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**RAYMON QUIROGA,**
  *on behalf of himself and all others similarly situated,*

      Plaintiff,

      v.                                     Case No. 22-CV-390-SCD

**OLDS PRODUCTS CO. OF ILLINOIS,**

      Defendant.

### DECISION AND ORDER
### DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Raymon Quiroga alleges that his former employer, Olds Products Co. of Illinois, failed to pay him for all hours worked and at the proper rate, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201–262, and Wisconsin's wage payment and collection laws, Wis. Stat. §§ 103.001–103.97, 104.001–104.12, and 109.01–109.12. Quiroga claims that these underpayments resulted from a policy or practice that affected many other hourly-paid, non-exempt employees at Olds' production facility in Wisconsin. As such, he has moved for class certification under Rule 23 of the Federal Rules of Civil Procedure. Because Quiroga has failed to meet his burden of showing that the proposed class satisfies all the requirements of Rule 23, the court will deny his motion.

### BACKGROUND

Olds Products Co. of Illinois manufactures mustard and vinegar at its production facility in Pleasant Prairie, Wisconsin. *See* Pl.'s Mem. 2, ECF No. 45. To ensure good manufacturing practices, Olds requires all employees entering the production floor to wear clean clothes. Def.'s Mem. 3, ECF No. 47. The company provides its permanent production

employees a white button-down shirt and white pants, and most (if not all) permanent employees wear the provided garments. Pl.'s Mem. 3; Def.'s Mem. 3. Production employees must also wear a hairnet, gloves, and, if applicable, a beard net.

Olds tracks its hourly employees' time via an electronic timekeeping system. Pl.'s Mem. 3. Production employees use a biometric scanner to clock in and out. The scanner is in the breakroom just outside the door to the production floor. Def.'s Mem. 2–3. Gretchen Remien, Olds' plant manager, indicated that production employees generally clock in, change into their uniform (if they have one)—which she said takes a minute or two—and then proceed to the production floor. Pl.'s Mem. 4; Def.'s Mem. 3. However, according to Remien, some production employees clock in up to forty-five minutes early and wait in the breakroom, usually drinking coffee, until their shift starts. Def.'s Mem. 3. Production employees are not supposed to begin working prior to their scheduled start time, *id.*, and they are subject to discipline if they clock in late, Pl.'s Mem. 3–4. The timekeeping system rounds the clock-in time to the employee's scheduled start time. So, if an employee's shift begins at 7:00 a.m. and he clocks in at 6:55 a.m., the system rounds the clock-in time to 7:00.

According to Remien, the process is reversed for the end of each shift. *See* Def.'s Mem. 3. Production employees leave the production floor, change (if necessary), and wait in the breakroom to clock out. Def.'s Mem. 3. The timekeeping system rounds the clock-out time to the previous fifteen-minute interval. For example, if an employee's shift ends at 3:15 p.m. and he clocks out at 3:20 p.m., the system rounds the clock-out time to 3:15. But if the employee clocks out at 3:31 p.m., the system rounds the clock-out time to 3:30. Production employees are not permitted to clock out prior to their scheduled end time. Pl.'s Mem. 4.

Although the timekeeping system records the exact time each production employee clocks in and out, Olds pays its production employees based on the rounded clock-in and clock-out times. Pl.'s Mem. 4.

In addition to wages, production employees are eligible to receive quarterly performance bonuses. *See* Pl.'s Mem. 4–5; Def.'s Mem. 4. The purpose of the quarterly bonus program is to incentivize production employees and to highlight employees who go above and beyond. To determine whether a bonus is paid and, if so, the amount of the bonus (they vary from quarter to quarter and employee to employee), Olds considers the employee's performance, work effort, attendance, and discipline, as well as the company's soft values (e.g., the core value of family and whether the employee is furthering that value). Not every production employee receives a bonus. Bonus payments are a flat sum; they are never paid as a percentage of the employee's time or work. Bonus payments are not included in calculating production employees' regular rate of pay for overtime compensation.

Raymon Quiroga worked as a mill room operator at Olds' production facility from 2014 to 2022. Compl. ¶¶ 26–27, ECF No. 1. During his employment, Quiroga received a quarterly performance bonus. Pl.'s Mem. 4. In March 2022, Quiroga filed a collection and class action complaint against Olds alleging that the company violated the Fair Labor Standards Act and Wisconsin's wage laws. *See Compl.* The matter was reassigned to this court after all parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 4, 8, 9.

The parties stipulated to conditionally certify a Fair Labor Standards Act collective action for notice purposes only. *See* Stipulation, ECF No. 30. The court approved the parties' stipulation, *see* ECF No. 31, and on August 24, 2023, the notice was mailed to putative collective members, *see* Pl.'s Reply 3 n.2, ECF No. 49. Remien told the company's long-time

3

Case 2:22-cv-00390-SCD    Filed 10/17/24    Page 3 of 12    Document 54

business attorney that employees had questions about the notice, so the attorney agreed to meet with all production employees as a group before their shifts on August 29, 2023. *Id.* at 3. At the meeting, the attorney indicated that the company denied Quiroga's allegations and that participation in the lawsuit would not affect the employees' employment. *See id.* at 3–4; *see also* Def.'s Sur-Reply 5–6, ECF No. 53. No employee elected to opt in to the collective action. *See* Def.'s Mem. 2. Consequently, the court granted Olds' motion for decertification. *See* ECF No. 38.

On July 12, 2024, Quiroga moved for class certification. *See* Pl.'s Mot., ECF No. 44; Pl.'s Mem., ECF No. 45. Olds submitted a memorandum in opposition to the motion, *see* ECF No. 47, and Quiroga submitted a reply brief, *see* ECF No. 49. With leave of court, Olds filed a sur-reply on August 27, 2024. *See* ECF No. 53.

## DISCUSSION

Quiroga's theory is that Olds failed to compensate him and other hourly-paid, non-exempt production employees for all hours worked and at the proper rate. According to Quiroga, these underpayments were accomplished via two company policies and practices. First, Quiroga alleges that Olds shaved time via electronic time clock rounding from his and other employees' weekly timesheets for pre- and post-shift hours worked. Second, Quiroga alleges that Olds failed to include all forms of non-discretionary compensation in those employees' regular rates of pay for overtime calculation purposes. Quiroga seeks to certify a class of all current and former hourly-paid, non-exempt production employees of Olds who were employed at any time on or after March 29, 2020.

I. Applicable Law

"To be certified, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure 23(a), as well as one of the three alternatives in Rule 23(b)." *Messner v. Northshore*

4

*Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010)). Rule 23(a) has four requirements:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Because Quiroga seeks certification under the third alternative of Rule 23(b), he "must also show: (1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy." *Messner*, 669 F.3d at 811 (citing *Siegel*, 612 F.3d at 935). Quiroga bears the burden of showing that the proposed class satisfies each of the Rule 23 requirements by a preponderance of the evidence. *See id.* (citations omitted).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In analyzing these requirements, "the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811 (citations omitted). The court, however, "may not simply assume the truth of the matters as asserted by the plaintiff. If there are material factual disputes, the court must 'receive evidence . . . and resolve the disputes before deciding whether to certify the class.'" *Id.* (quoting *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). "'A class may only be certified if the trial court is satisfied, after a rigorous analysis,

5

that the prerequisites' for class certification have been met." *Bell v. PNC Bank, N.A.*, 800 F.3d 360, 373 (7th Cir. 2015) (quoting *CE Design, Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011)). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart Stores*, 564 U.S. at 351.

"Although a court need only find a single common question of law or fact . . . , the mere occurrence of all plaintiffs suffering as a result of a violation of the same provision of law is not enough." *Bell*, 800 F.3d at 374 (citing *Wal-Mart Stores*, 564 U.S. at 359; *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755 (7th Cir. 2014)). "The claims must depend upon a common contention that is capable of classwide resolution." *Id.* (citing *Wal-Mart Stores*, 564 U.S. at 350; *Chi. Teachers Union*, 797 F.3d at 434). "In this context, class-wide resolution means that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Id.* (citing *Wal-Mart Stores*, 564 U.S. at 350).

> What matters to class certification . . . is not the raising of common "questions"—even in droves—but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (quoting *Wal-Mart Stores*, 564 U.S. at 350). There must be "some glue holding the alleged *reasons*" for the allegedly unlawful policy or practice; otherwise "it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question" the case presents. *Wal-Mart Stores*, 564 U.S. at 352.

"While similar to Rule 23(a)'s requirements for typicality and commonality, 'the predominance criterion is far more demanding.'" *Messner*, 669 F.3d at 814 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)). "The predominance inquiry, which

6

'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, . . . calls upon courts to give careful scrutiny to the relation between common and individual questions in a case.'" *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 843 (7th Cir. 2022) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member; a common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Id.* at 843–44 (citing *Tyson Foods*, 577 U.S. at 453).

"There is no mathematical or mechanical test for evaluating predominance." *Messner*, 669 F.3d at 814 (citing 7AA Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)). "Rule 23(b)(3)'s predominance requirement is satisfied when 'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Id.* at 815 (quoting Wright & Miller, § 1778). "Or, to put it another way, common questions can predominate if a 'common nucleus of operative facts and issues' underlies the claims brought by the proposed class." *Id.* (quoting *In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006)). However, the plaintiff need not show "that *questions* common to the class . . . will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013).

## II. Analysis

Quiroga contends that his proposed class satisfies each of the four requirements of Rule 23(a) and both requirements of Rule 23(b)(3). According to Quiroga, joinder of all members is impracticable, as the class contains more than 100 potential members. *See* Pl.'s Mem. 6–7. Quiroga identifies three common questions of law that he says apply to the class:

    1.    Is timeclock rounding permitted under existing Wisconsin law?

7

2. If so, was Defendant's timeclock rounding used in a non-neutral manner such that Defendant deprived Production Employees, including Plaintiff, of compensation for all hours worked and/or work performed including at an overtime premium rate of pay for all hours worked in excess of forty (40) in a workweek?

3. Are [quarterly performance bonus] payments non-discretionary such that Defendant should have included the same in the regular rate of pay when calculating Production Employees' overtime premium compensation?

*Id.* at 8. Quiroga insists that resolution of these questions may conclusively establish liability on a class-wide basis. *See id.* at 7–16. Quiroga also insists that his claims are typical of the claims of the class, as he, like the other production employees, worked at Olds' production facility in Pleasant Prairie; was subject to the same company policies, payroll practices, and time clock rounding system; received a quarterly bonus payment; and was not paid for all hours worked, including wages at the proper overtime rate. *Id.* at 16–17. And Quiroga says that he is an adequate representative of the class, with no conflict of interest, and that class counsel are experienced employment law attorneys. *Id.* at 17–18. As for Rule 23(b)(3), Quiroga maintains that the three common questions predominate whatever individualized inquires may exist because they involve whether Olds' uniform policies and practices deprived production employees of compensation for all hours worked. *Id.* at 19–20. According to Quiroga, the determination of those questions will end the litigation. Finally, Quiroga asserts that proceeding as a class action would achieve economies or time, effort, and expense and would promote uniformity of decision. *Id.* at 20–22.

Even if Quiroga could satisfy the other requirements of Rule 23, he has not shown by a preponderance of the evidence that "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), or to the extent there are, that those common questions "predominate over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(3).

The answer to the first question—whether Wisconsin law permits time clock rounding—is unlikely to resolve an issue that is central to the validity of his claims. The issue appears unsettled. Nevertheless, while Quiroga may be right that Wisconsin law requires employers to pay its employees for the entire workday, that requirement would not prohibit all time clock rounding. Suppose an employer implemented a rounding practice that solely benefited its employees—for example, rounding the clock-in time back, or the clock-out time forward, to the nearest quarter hour.[1] Surely a practice that results in an employee being paid *more* than what he's due would not violate the law. In other words, determining whether time clock rounding violates Wisconsin's wage law necessarily requires an assessment of how the policy affects the employee's wages. Because the answer to the first question cannot be a hard "no," and because the whole class would not fail in unison if the answer were "yes," the first question is irrelevant to the claims of Quiroga and potential class members.

The key issue to be resolved for Quiroga and the proposed class to recover under Wisconsin's wage law is whether Olds' time clock rounding practice, combined with the company's other policies, deprives production employees of compensation for all hours worked. This second question cannot be resolved on a class-wide basis. According to Remien, Olds' plant manager, the timekeeping system rounds early clock-in times up and clock-out times back. The rounding practice therefore applies evenly to all production employees and appears on its face to generally favor the company.[2] But that tells us nothing about whether

---

[1] This hypothetical rounding methodology is not implausible. Some employers adopt employee-favorable payment practices to cover themselves for small amounts of uncompensated time that arguably should be compensated (e.g., donning and doffing). For example, Olds pays its hourly employees fifteen minutes of their meal period, which is otherwise non-compensable time.

[2] The rounding practice does appear to favor employees who wait until more than fifteen minutes after the end of their shift to clock out. For example, if an employee's shift ends at 3:15 p.m. and he stops working at that time or shortly thereafter, the employee will be paid for time not actually working if he clocks out at 3:31 or later. Quiroga presents no evidence prohibiting such time clock shenanigans.

the rounding practice shorts any compensable work time. To determine whether compensable work went unpaid (i.e., liability), the court needs to examine what each employee did before the start, and after the end, of his or her scheduled shift time—that is, evidence that varies from employee to employee. That's an individual question, not a common one.

Several cases help illustrate this point. For example, in *Weil v. Metal Technologies, Inc.*, two individuals alleged that their former employer violated Indiana wage laws by "unlawfully pay[ing] employees only for the hours that they were scheduled to work even when employees' timestamps showed that they were clocked in for longer than that." 925 F.3d 352, 354 (7th Cir. 2019). The district court conditionally certified that claim but later reversed course. On appeal, the Seventh Circuit affirmed the decertification, finding that "an employee's time stamp is not a *per se* record of work." *Id.* at 357. The court noted that employers do not need to compensate employees who clock in early but spend that extra time on non-work activities like drinking coffee or reading a newspaper. Thus, because the plaintiffs failed to present any evidence "that employees were actually *working* without compensation—not simply that they were clocked in for over 40 hours"—they lacked "both a theory of liability and proof of any injury." *Id.* at 357–58. Other courts considering similar time clock rounding claims have denied class certification, finding that the individual question of whether the employee actually worked without compensation predominated over any common questions of law or fact. *See, e.g.*, *Allen v. Pinnacle Entm't, Inc.*, No. 17-00374-CV-W-GAF, 2018 WL 11376059, 2018 U.S. Dist. LEXIS 245053, at *19–22 (W.D. Mo. Oct. 1, 2018); *Harris v. Georgia-Pacific Wood Prods. LLC*, No. 1:22-CV-2530-TWT, 2023 WL 2611723, 2023 U.S. Dist. LEXIS 49156, at *8–14 (N.D. Ga. Mar. 23, 2023). *But see Schneider v. Union Hosp., Inc.*, No. 2:15-cv-00204-JMS-DKL, 2016 WL 6037085, 2016 U.S. Dist. LEXIS 142427, at *33–45 (S.D. Ind. Oct. 14, 2016) (certifying a time clock rounding claim).

10

Like the plaintiffs in *Weil*, Quiroga has not presented any evidence suggesting that he—or any other potential class member—lost compensable time as a result of Olds' time clock rounding practice. Quiroga says that the company expects employees to clock in, change, and proceed to the production floor. But employees would lose compensable time only if they clocked in early and heeded the company's alleged expectation. Remien, however, testified that employees are not supposed to begin working until the start of their scheduled shift. She also testified that employees who do clock in early sit in the breakroom and wait until their shift starts. Quiroga offers no evidence to contradict Remien's observations. Thus, the evidence presented thus far shows that in practice employees do not perform compensable work during the rounded time period.

Similarly, Quiroga presents no evidence to support his contention that Olds' policies and practices require production employees to don and doff a uniform and personable protective equipment prior to and after their scheduled shifts. Employees can clock in at their scheduled start time, quickly change, and proceed to the production floor without violating any company policy. Also, no policy appears to prohibit employees from clocking in early and waiting until their scheduled shift time to change. And Remien testified that employees put on their hairnets and gloves *after* their shifts start and remove their provided garments and other gear *before* clocking out. The company's rounding practice therefore does not impact those donning and doffing activities, assuming they constitute compensable time.

Relying on *Bell*, Quiroga argues that the potential need for individualized relief should not preclude class certification. Unlike *Bell*, however, our case does not involve strong evidence of a policy requiring employees to work off-the-clock. Rather, our case is about the application or effect of Olds' time clock rounding practice—not whether the practice itself is unlawful—and determining whether any employee was denied compensation would require

11

an individualized inquiry into the employee's pre- and post-shift habits. That individual question predominates over the alleged common questions proposed by Quiroga.

Finally, the question of whether Olds' quarterly performance bonuses are discretionary is not common for the entire proposed class because not every class member received a bonus. Quiroga argues that every quarterly bonus that was paid was excluded from the production employee's regular rate of pay for calculating the overtime rate. Even if that alleged company-wide policy were a question common to all employees in a bonus subclass, it would not change the class-certification analysis, as Quiroga fails to present any evidence suggesting that the bonuses were non-discretionary. The evidence shows that quarterly bonuses are awarded based on subjective criteria like work effort and demonstration of the company's values. They also vary in amount from quarter to quarter and employee to employee. Quiroga therefore has not demonstrated a common question regarding the company's bonus program.

## CONCLUSION

In sum, Quiroga has failed to show by a preponderance of the evidence that there are questions of law or fact common to the class or that any common question predominates over individual questions. Quiroga therefore has failed to meet his burden on each of the requirements of Rule 23. Accordingly, the court **DENIES** the plaintiff's motion for class certification, ECF No. 44.

**SO ORDERED** this 17th day of October, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge